IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BRIAN NELSON, PATRICK NELSON, and NELSON BROTHERS PROFESSIONAL REAL ESTATE, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**FREEBORN & PETERS, LLP,**<br><br>Defendant. | **Case No. 11 C 1277**<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

**I.  BACKGROUND**

This is a legal malpractice suit brought by a corporation and its shareholders against a law firm over alleged legal representation. The case stems from Plaintiffs' attempt to acquire a shopping center in Algonquin, Illinois. The Plaintiff Nelson Brothers Professional Real Estate, LLC ("Nelson Brothers LLC") is a California LLC, whose members are the other Plaintiffs, Patrick and Brain Nelson (the "Nelsons"), who are brothers. In March 2008, Burt Follman ("Follman") and Alliance Equities, LLC ("Alliance"), of which Ben Reinberg ("Reinberg") was a member, retained Freeborn & Peters to assist them in acquiring Algonquin. Their goal was to finance the acquisition through the sale of Tenant-in-Common ("TIC") interests to investors. Edward J. Hannon, a Freeborn partner, was principally responsible for the engagement. The

initial efforts of Alliance to secure TIC investors fell short of providing sufficient funds to make the acquisition. In June 2008, Reinberg and Follman were referred to the Nelsons, who had previous experience in TIC investments and resided in California. The Nelsons agreed to enter into a joint venture with Reinberg and Follman through their wholly-owned companies, where each company would own 50% of the resulting investment. Hannon prepared numerous documents to consummate the deal. These included an Operating Agreement under which Reinberg's and Follman's entity would negotiate the real estate purchase agreement for Algonquin, obtain a $16 million acquisition loan for the property, and supervise the preparation of documents related to the sale of TIC interests. The Nelsons were to supervise the sale of TIC interests, obtain a mezzanine loan for the acquisition that would not have recourse to Reinberg and Follman. For a variety of reasons, the attempted acquisition was not a success which resulted in the loss of substantial sums of money by the Nelsons and Nelson Brothers LLC.

The main issues raised in the case included whether Freeborn & Peters, through Hannon, represented the Nelsons in the transactions, and, if so, whether Freeborn & Peters committed legal malpractice in failing to protect the Nelsons' interests in the transaction. The jury by its verdicts answered both questions in the affirmative and awarded the two Nelson brothers, the sum of

$865,655.50, reduced by 16.67% for their contributory negligence, and a like sum of $865,655.50 for Nelson Brothers Professional Real Estate LLC, reduced by 9.1% for its contributory negligence. The Defendant has brought a Renewed Motion for a Judgment as a Matter of Law, or in the Alternative for a New Trial, or a Remittitur.

Specifically, the Plaintiffs contended that the Defendant law firm breached its duties to them by:

1. Simultaneously representing parties on opposite sides of a join venture without obtaining the informed consent to waive conflicts of interest;

2. The drafting of operating agreements that favored the Reinberg/Follman interests over the Plaintiffs;

3. Failing to advise the Plaintiffs of the true extent of their exposure under an unusual "badboy" carve-out provision in the mezzanine loan agreement; and

4. Failing to inform Plaintiffs of the mechanics' liens on the subject property and allowing them to close without an escrow of funds sufficient to cover liabilities associated with the liens.

The Defendant denied that it represented the Plaintiffs and denied that any of its actions constituted malpractice. The parties each called three experts who gave opinions as to the ultimate issues in the case. The Plaintiffs' experts each testified that there was, in fact, representation based upon the reasonable expectations of the Plaintiffs and that various aspects of the Defendant's representation fell short of the appropriate

standard of care. Correspondingly, each of the Defendant's experts opined exactly the opposite: that there was no representation and the transactions were appropriately structured. Each of the experts under went a vigorous cross-examination and each stuck by his opinions. The jury by its verdicts obviously believed the Plaintiff's experts over those of the Defendant.

Defendant, recognizing that it would have an uphill battle on the issues of liability, instead focuses almost exclusively on damages. As to the Nelson brothers, it contends that they suffered no direct injuries at all because, the whole transaction was through their LLC, so that any damages occasioned by the malpractice would go to the LLC and not the Nelson brothers individually, who would only have suffered "indirect" damages. As to the Nelson Brothers LLC, it contends that it likewise suffered no direct injuries. Defendant also contends that the evidence failed to establish that any damages to Nelson Brothers LLC that were proximately caused by the professional negligence of the Defendant. Finally, it argues that the claim for damages as a result of the mechanics' liens on the property is foreclosed by the Illinois statute of limitations. Defendant filed a Motion for a Judgment as a Matter of Law, or in the Alternative, for a New Trial or for a Remittitur.

## II. DISCUSSION

### A. Motion for Judgment as a Matter of Law

With respect to the claim that the Nelsons only sustained "indirect" damages, *i.e.,* their damages resulted from their wholly owned corporation sustaining damages. The Defendant relies on this Court's decision in *Astor Chauffered Limousine Company v. Runnfeldt,* 1988 WL 101267 (Sept. 23, 1988). However, *Astor* stands for the proposition that the attorney only owes a duty to its client and not third parties, unless the representation is clearly intended to benefit a third party. Defendant argues that, at most, Nelson Brothers LLC was the client and thus direct damages would have been sustained by it and the only damages the Nelsons would have suffered would be indirect, *i.e.,* loss of value of their corporate interests. Here the evidence looked at most favorably to Plaintiffs is that the Nelsons as well as the LLC were clients of Freeborn & Peters. Moreover, as the Court noted at the argument on Defendant's Rule 50 Motion during trial, part of the claim of malpractice was that the actual structure of the transaction was not protective of the Nelsons individually, which caused them to take certain steps which were to their respective financial detriment. For example, the Nelsons were induced personally to guarantee the mezzanine financing which caused them monetary losses, in the form of attorneys fees. Also, the Nelsons were required to borrow money from a relative which they had to pay

back. *See, Bevelheimer v. Gierach,* 33 Ill. App. 3d 988, 994 (1st Dist. 1975) ("There is an exception to this general rule [a corporation being the owner of a malpractice claim] when the stockholder shows that the specific wrong complained of is not only a wrong against the corporation but also a violation of a duty owning to the stockholder personally.")

With regard to the claim that the LLC did not sustain direct injuries as a result of the malpractice, Plaintiffs argued at trial, successfully, that it would not have contributed $1.3 million to this endeavor if it had known the risks associated with the agreement which favored the other joint venturer. The removal of $49,999.00 from the mezzanine loan proceeds caused the LLC to incur additional expense when it sought to renew its mezzanine loan, and it was forced to incur substantial attorneys' fees in the effort. Further, the failure to disclose and warn of the existence of mechanics' liens against the promises, was negligence according to Plaintiffs' experts. The liens could have been protected against by obtaining sufficient funds in an escrow to satisfy them in the event they were not paid. This was not done which greatly inhibited the Plaintiffs efforts to sell and close on the TIC units. The Plaintiffs' experts adequately explained how this was a violation of professional responsibility.

Because there was no error in the trial and because the evidence looked at most favorably for the Plaintiffs, the Motion for Judgment as a Matter of Law is denied.

### B. Motion for New Trial

Under the Motion for a New Trial, the Court is required to weigh the evidenced in order to determine whether the verdict was against its "clear weight," or whether the damages were excessive. *Spina v. Forest Preserve District,* 207 F.Supp.2d 764 (N.D.Ill. 2002). While the evidence of liability is not clearly against the weight of the evidence, the award of damages in favor of the Nelson brothers is. As pointed out by Defendant, the vast majority of the damages was incurred by the LLC and the damages to the Plaintiff brothers was substantially less. The damages to the Nelsons consisted of the attorneys' fees paid concerning the mezzanine loan and the money borrowed and repaid to their sister. This consisted of $139,068.82 plus the $161,000 borrowed from their sister. Thus, their total damages were $200,068.82. Reducing this by the 16.7% found by the jury as their contributory negligence equals $166,660.08. The Plaintiffs shall have twenty-one (21) days to agree to the Remittitur or the Court will grant a new trial on the issue of damages to the Plaintiff brothers.

### III. CONCLUSION

For the reasons stated herein, the Defendant's Motion for a Judgment as a Matter of Law is denied. The Motion for a New Trial

is denied as to Nelson Brothers Professional Real Estate, LLC, but conditionally granted as to Plaintiffs, Brian Nelson and Patrick Nelson unless they agree within twenty-one (21) days to a Remittitur to the amount of $166,660.08.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　United States District Court

Date:3/17/2014